## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Sisay Akaku, | Case File No. 16-cv-1901 (DWF/FLN) |
| Plaintiff, | |
| v. | **MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT UNITE HERE'S MOTION FOR JUDGMENT ON THE PLEADINGS** |
| UNITE HERE Local No. 17; and Graves Hospitality Corporation, | |
| Defendants. | |

---

## INTRODUCTION

The long history of union discrimination against minorities and women, now happily receding, led Congress to forbid discrimination by unions as well as employers. *See* 42 U.S.C. § 2003e-2(c). Against a background of union discrimination, Congress was aware that, in the context of claims under the Civil Rights Act, unions sometimes had been the adversary of workers.

*Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 749–50 (1981) (Burger, C.J. dissenting). Unfortunately, while discrimination by unions against their members might have been receding in 1981, it is still not a thing of the past.

Plaintiff Sisay Akaku is a black woman of Ethiopian descent. She is also a busser at a restaurant run by Defendant Graves Hospitality Corporation and union member of Defendant UNITE HERE Local No. 17. For more than two years now, Ms. Akaku has been struggling to make ends meet because her employer, Graves, cut her hours by more than seventy-five percent at one of its restaurants and refused to hire her at another—and because her union, UNITE HERE, failed to take up the fight on her behalf. Ms. Akaku alleges that UNITE HERE failed to take up this fight because of her race and national

origin. In its motion for judgment on the pleadings, UNITE HERE asks this Court to dismiss Ms. Akaku's case before she is even allowed to conduct discovery. The Court should deny UNITE HERE's motion for judgment on the pleadings because Ms. Akaku has stated claims for relief against her union that are *not* preempted by federal labor law.

## SUMMARY OF RELEVANT FACTS

Ms. Akaku is a black woman of Ethiopian descent. (Proposed Second Amended Complaint (ECF No. 23-1) at ¶ 1.)[1] For the past several years, Ms. Akaku has been a busser at Towns/American Grill, a restaurant owned and run by Defendant Graves Hospitality Corporation ("Graves"). (ECF No. 10 at ¶¶ 3–4, 14.) Likewise, during this time, Ms. Akaku has been a union member of Defendant UNITE HERE. (ECF No. 10 at ¶ 2.)

In the summer of 2014, Graves opened a second restaurant downstairs from Towns/American called Rival House. (ECF No. 10 at ¶ 4.) Before its opening, multiple employees at Towns/American moved to Rival House. (ECF No. 23-1 at ¶ 6.) Ms. Akaku was not among them. (*Id.*) Graves interviewed Ms. Akaku for a position at Rival House, but failed to hire her. (Id.) Among the employees who Rival House did hire were people outside of Ms. Akaku's race and national origin. (*Id.*)

Soon after Rival House opened in early July 2014, Towns/American stopped serving customers after breakfast. (ECF No. 23-1 at ¶ 8.) As a result of its decision to close Towns/American after breakfast and its failure to hire Ms. Akaku at Rival House,

---

[1] Attached hereto as Exhibit 1 to the Affidavit of Matthew A. Frank.

Graves cut Ms. Akaku's hours from full-time to approximately eight hours per week. (ECF No. 10 at ¶¶ 7, 17.)

Again, between July and September, Ms. Akaku expressed interest in moving to an open position at Rival House. (ECF No. 10 at ¶¶ 4–5, 13–14; ECF No. 23-1 at ¶¶ 10–14.) But, again, Graves stopped her from making the move. (*Id.*) According to Graves, Ms. Akaku was not qualified for the busser position at Rival House because of her lack of English language skills. (ECF No. 10 at ¶¶ 5, 13; ECF No. 23-1 at ¶¶ 11–14.) However, the duties of the busser positions were the same, and Ms. Akaku believed she was qualified to perform them. (ECF No. 10 at ¶¶ 5–6; ECF No. 23-1 at ¶¶ 15–16.) So, too, did her coworkers *and* UNITE HERE President Nancy Goldman. (ECF No. 23-1 at ¶¶ 16–17.) Indeed, in discussions with Ms. Akaku, President Goldman said she was "shocked" that Graves was claiming she did not speak English well enough to work at Rival House. (ECF No. 23-1 at ¶ 17.) Ms. Akaku believed that Graves' failure to hire her and subsequent failure to move her to Rival House were the result of discrimination on the basis of race and national origin. (ECF No. 10 at ¶ 6.) Again, her coworkers agreed. (ECF No. 23-1 at ¶ 17.)

Accordingly, Ms. Akaku went to her union, UNITE HERE, asking for help. (ECF No. 10 at ¶ 7.) She visited the union office several times; called back and forth with her union steward in excess of fifty times; and sent letters regarding her concerns of discrimination. (ECF No. 10 at ¶¶ 7 – 9, 13–15.) But to no avail. (ECF No. 23-1 at ¶ 18.) Despite Ms. Akaku's efforts, Defendant UNITE HERE claimed it never pursued a grievance on her behalf because she never asked it to. (ECF No. 10 at ¶ 8.) In so doing,

Defendant UNITE HERE deprived Ms. Akaku of full membership rights under her collective bargaining agreement and otherwise discriminated against her on the basis of race and national origin. (ECF No. 10 ¶¶ 10–14; *see generally* ECF No. 23-1.)

With nowhere else to turn, Ms. Akaku filed timely charges of discrimination against her employer and her union. In both cases, she exhausted her administrative remedies. Specifically, against Graves, she filed with the Equal Opportunity Employment Commission ("EEOC") and Minnesota Department of Human Rights. (ECF No. 10 at ¶ 16.) The EEOC issued her a right to sue Graves on April 1, 2016, and the MDHR issued a right to sue on June 24, 2016. (*Id.*)

Against Defendant UNITE HERE, Ms. Akaku filed with the St. Paul Department of Human Rights and Equal Economic Security ("St. Paul DHR") and the EEOC (ECF No. 10 at ¶ 15.) The St. Paul DHR found probable cause to believe that UNITE HERE discriminated against Ms. Akaku on the basis of race and national origin, and issued a right to sue on March 29, 2016. (ECF No. 10 at ¶ 15.) The EEOC adopted the St. Paul DHR's findings and issued her a right to sue on May 17, 2016. (ECF No. 26-1.)

## PROCEDURAL HISTORY

Ms. Akaku originally brought this action against three Defendants—including Defendants Graves and UNITE HERE—in Ramsey County Court on May 10, 2016. (ECF No. 1, Ex. A.)  On June 8, 2016, Defendant Graves removed the case to federal court. (ECF No. 1.) On July 19, 2016, the parties filed a stipulation to amend the complaint to change the case caption, dismiss one of the original defendants without prejudice, and add a claim for discrimination on the basis of race and national origin

4

against Defendant Graves. (ECF No. 8.) On July 25, 2016, the Court ordered Ms. Akaku to file her First Amended Complaint (ECF No. 9), which she did that same day. (ECF No. 10.)

The parties then filed their Joint Rule 26(f) Report on August 12, 2016 (ECF No. 14), and attended the Court's pretrial conference on August 19, 2016. (ECF No. 15.) On August 26, 2016, the Court issued its Scheduling Order. (ECF No. 16.) Pursuant to this Order, the parties must move to amend the pleadings by December 1, 2016; commence discovery in time to be completed by April 1, 2017; and be ready for trial by November 1, 2017. (*Id.*)

On September 2, 2016, the parties met and conferred regarding Plaintiff's intent to amend her complaint to add federal claims of discrimination against Defendant UNITE HERE under Title VII and Section 1981 and Defendant UNITE HERE's intent to move to dismiss Plaintiff's state and local discrimination claims. Those discussions were not fruitful. On September 6, 2016, Defendant UNITE HERE moved this Court to dismiss Ms. Akaku's state and local discrimination claims with prejudice. (ECF No. 17.) On September 22, 2016, Ms. Akaku moved this Court to permit her to add federal claims of discrimination against UNITE HERE. (ECF No. 25.) On October 6, 2016, Magistrate Judge Noel will hear oral argument on Ms. Akaku's motion to amend.

## ARGUMENT

### I.   LEGAL STANDARD

On a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure, courts must assume all facts in the complaint are true, must view

those facts in a light most favorable to the plaintiff, and must make all reasonable inferences in the plaintiff's favor. *Acker v. Environmental Resources Management, Inc.*, 93 F. Supp. 3d 1060, 1062 (D. Minn. 2015) (citations omitted). The plaintiff need only allege facts that "raise a right to relief above the speculative level," which go beyond mere "threadbare recitals of the elements of a cause of action." *Id.* at 63 (citations omitted). Put another way, the plaintiff must allege facts that create a "reasonable expectation that discovery will yield evidence of the claim. *Id.* (internal brackets removed).

When deciding a motion to dismiss following the filing of a motion to amend, a court must consider the facts alleged in a plaintiff's proposed amended complaint. *See Besett v. Wadena Cty.*, No. CIV 10-934 JRT/LIB, 2010 WL 5439720, at *6 (D. Minn. Dec. 7, 2010), *report and recommendation adopted*, No. CIV.A. 10-0934 JRT/LIB, 2010 WL 5441937 (D. Minn. Dec. 28, 2010) ("The Eighth Circuit has held that, as a procedural matter, it is plainly erroneous for a district court to grant a motion to dismiss, and then to deny a pending motion to amend as moot, without consideration of the merits of the motion to amend." ) (citing *Pure Country, Inc. v. Sigma Chi Fraternity,* 312 F.3d 952, 956 (8th Cir.2002); *Magee v. Trustees of the Hamline Univ., Minn.*, 957 F. Supp. 2d 1047, 1069 (D. Minn. 2013), *aff'd sub nom. Magee v. Trustees of Hamline Univ., Minn.*, 747 F.3d 532 (8th Cir. 2014) ("Magee should be allowed the opportunity to present the factual allegations in the Proposed Amended Complaint in the context of defendants' motions to dismiss.").

## II.   MS. AKAKU HAS STATED CLAIMS FOR RELIEF AGAINST UNITE HERE UNDER THE MHRA, TITLE VII AND SECTION 1981

### A.   Ms. Akaku's State and Federal Discrimination Claims All Require that She Allege the Same Thing: That UNITE HERE Failed to File a Grievance on Her Behalf, or Otherwise Assist Her, Because of Her Race or National Origin

When interpreting the Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363A.01 *et seq*., Minnesota courts look to the MHRA's federal counterpart for interpretative guidance when the texts of the two statutes are substantially similar. *Sigurdson v. Isanti Cty.*, 386 N.W.2d 715, 719 (Minn. 1986). In this case, the provisions in the MHRA and Title VII regarding unfair employment practices by unions are substantially similar. Where the MHRA provides that:

> [I]t is unfair employment practice for a labor organization, *because of race ... or national origin*, ... to ... (1) deny full and equal membership rights ... to a member; (2) to *expel from membership*; (3) to *discriminate against* a ... member with respect to hiring, ..., terms, ..., conditions, or *privileges of employment*; or (4) to *classify properly*, or *refer for employment* or *otherwise discriminate* against a ... member.

Minn. Stat. § 363A.08, subd. 1 (emphasis added). Title VII of the Civil Rights Act of 1964 ("Title VII") provides that:

> [I]t is an unfair employment practice for a labor organization ... (1) to exclude or to *expel from its membership*, or *otherwise to discriminate* against, any individual *because of his race ... or national origin*, ... or ... to limit, segregate, ... or to *classify or fail or refuse to refer for employment* any individual, in any way which would deprive or tend to deprive any individual of *employment opportunities* ... or otherwise adversely affect his *status as an employee* ..., *because of such individual's race ... or national origin*.

42 U.S.C.A. § 2000e-2 (emphasis added). Accordingly, if Ms. Akaku alleges facts sufficient to state a claim against UNITE HERE for discrimination on the basis of race or

7

national origin under Title VII, she also states a parallel claim for discrimination under the MHRA. *See Peltonen v. Branch No. 9*, No. CIV 05-605 DWF/JSM, 2006 WL 2827239, at *24–25 (D. Minn. Sept. 29, 2006) ("[T]he elements of a discrimination claim under Title VII and the MHRA are the same.") (citing *Saulsberry v. St. Mary's Univ. of Minn.,* 318 F.3d 862, 866 (8th Cir. 2003)).

It is well-settled that a plaintiff states a claim against a union for race or national origin discrimination under Title VII—as well as for race discrimination under Section 1981—when she alleges that the union failed to file a grievance (or otherwise failed to assist her) on the basis of race or national origin. *Goodman v. Lukens Steel Co.*, 482 U.S. 656 (1987), superseded by statute on other grounds; *see also Kim v. Nash Finch Co.*, 123 F.3d 1046, 1063 (8th Cir. 1997) ([A]s discussed above, Title VII and § 1981 set forth parallel, substantially identical, legal theories of recovery in cases alleging intentional discrimination in employment on the basis of race." (citations omitted)).

This is precisely what Ms. Akaku alleges happened here. She is a black woman of Ethiopian descent. She was qualified for a busser (server-assistant) position at Rival House, but Graves refused to hire or move her there even though it hired and moved others who were not members of her race or national origin. Graves says Ms. Akaku was not qualified for the position at Rival House because of her poor English. But Ms. Akaku, her coworkers, and apparently UNITE HERE President Goldman disagreed. Yet, when Ms. Akaku came to her union for help, UNITE HERE repeatedly declined to file a discrimination grievance on her behalf or otherwise assist her in moving to Rival House. Finally, UNITE HERE failed to advocate for Ms. Akaku even though the union did take

8

action on behalf of people outside of Ms. Akaku's race and national origin in their efforts to move from Towns/American to Rival House. These allegations, taken as true and viewed in the light most favorable to Ms. Akaku, rise above the level of mere threadbare recitals of the elements of a discrimination claim, and they create the reasonable expectation that discovery will yield evidence of her claim.

UNITE HERE argues that Ms. Akaku's discrimination claims require proof that the union violated its duty of fair representation ("DFR"). (ECF No. 19 at 16–23.) But UNITE HERE is wrong. Neither a Title VII nor a Section 1981 plaintiff—much less an MHRA plaintiff—must prove a separate DFR claim in order to prevail on her discrimination claims against a union. *Green v. Am. Fed'n of Teachers/Illinois Fed'n of Teachers Local 604*, 740 F.3d 1104, 1107 (7th Cir. 2014) ("If the union would have processed Green's grievance or represented him under the Tenure Act had he been white—or had he refrained from complaining about other discriminatory episodes—then the union violated Title VII."); *see also Garity v. APWU National Labor Org.*, 828 F.3d 848, 857–865 (9th Cir. 2016) (evaluating and adopting the rationale of *Green* and applying it in the context of ADA claims against unions).

UNITE HERE cites two cases in support of its claim that a discrimination claim against a union requires extra proof of a DFR claim. The first is *Carter v. United Food & Commercial Workers, Local No. 789*, 963 F.2d 1078, 1083 (8th Cir. 1992). The problem for UNITE HERE is that this case—an apparently binding Eighth Circuit case—held the exact opposite of what UNITE HERE says it does. Indeed, in *Carter*, the Eighth Circuit **reversed** the district court's decision granting summary judgment to the union because

the union's conduct indisputably passed the "wide range of reasonableness" test. *Carter*, 963 F.2d at 1082.[2] The court explained that the plaintiffs were not claiming the union's conduct was "arbitrary," but instead contending that the union was discriminating against its female members. *Id.* "It is irrelevant," said the court, "whether [the union's conduct] fell within a "wide range of reasonableness." *Id.* What matters, instead, is whether the plaintiffs alleged sex discrimination.  *See id.* (citations omitted).

The second case UNITE HERE cites—a 1997 case from the Seventh Circuit— fares no better. *See Greenslade v. Chicago Sun–Times, Inc.,* 112 F.3d 853, 866 (7th Cir. 1997). Seventeen years after *Greenslade*, and just two years ago, the Seventh Circuit explicitly and persuasively repudiated the apparent suggestion in *Greenslade* that a Title VII claim against a union might require extra proof of a DFR claim.

First, the court noted that the routine recitation of elements in *Greenslade* was mere dicta. *Green*, 740 F.3d at 1106 ("Greenslade lost because he could not show discrimination, rather than for inability to prove the violation of an extrinsic duty [e.g., the duty of fair representation]."). Second, the court noted that the language in *Greenslade* conflated Title VII claims with hybrid breach-of-contract/DFR claims, and held that such an approach "bears no evident relation to Title VII." *Id.* (citations omitted). Courts are not authorized to add elements to a Title VII claim that are "missing from Title

---

[2] UNITE HERE spends several pages in its motion to dismiss explaining why Ms. Akaku has not alleged facts sufficient to state a claim that the union acted arbitrarily and outside the "wide range of reasonableness." Even if that were so (and it is *not*), it is irrelevant to whether Ms. Akaku has alleged facts sufficient to state a claim that the union discriminated against her in violation of Title VII, Section 1981, and, for that matter, the MHRA. *See Carter*, 963 F.2d at 1082.

VII as enacted," including, for example, that the union breached a duty under the collective bargaining agreement. *Id.*

Therefore, to state a claim for relief for race discrimination under Title VII or Section 1981—or, for that matter, under the MHRA—a plaintiff need only allege that the union discriminated against her on the basis of a protected status, not that the union also violated its DFR. *See id.*;[3] *see also Peltonen*, 2006 WL at *14, 24 – 25 (holding both that the plaintiff had *not* asserted a DFR claim in his complaint, but had stated a claim against his union for violations of Title VII and the MHRA for conduct allegedly performed in its capacity as his exclusive bargaining agent). Defendant's motion should be denied because the allegations in Plaintiff's Proposed Second Amended Complaint meet this standard (*see generally* ECF No. 23-1) as do the allegations in her already-filed First Amended Complaint. *See* ECF No. 10 at ¶ 15 (explaining that the St. Paul Department of Human Rights found probable cause to believe that UNITE HERE discriminated against Plaintiff based on her race and national origin).

### B. Ms. Akaku's Federal Discrimination Claims Are Timely

UNITE HERE argues that Ms. Akaku's federal discrimination claims are futile because they are barred by the applicable statutes of limitations. Again, UNITE HERE is wrong. Ms. Akaku's proposed federal discrimination claims are timely. First, Ms.

---

[3] It is notable that the Court then concluded its opinion by admonishing the district court to "allow discovery bearing on [whether the union would have treated the plaintiff better if he were white] and should not be quick to condemn as conclusory or self-serving any affidavit [the plaintiff] files in an effort to satisfy his burden," (citation and internal quotations omitted). *Id.* Likewise, Ms. Akaku should be allowed to conduct discovery bearing on her claims against UNITE HERE.

Akaku's Section 1981 claim has a six-year statute of limitations based on Minnesota's analogous personal injury statute. *See Woodson v. Int'l Bhd. of Elec. Workers Local 292*, 974 F. Supp. 1256, 1261–62 (D. Minn. 1997) (citations omitted). Several more years will need to pass before time runs out on Ms. Akaku's right to bring a Section 1981 claim against UNITE HERE.

Second, although Ms. Akaku moved to amend her complaint to add a Title VII claim against UNITE HERE more than ninety days after she received notice of her right to sue from the EEOC, the Title VII claim remains timely because it *relates back* to the date on which she served her original complaint (i.e., May 10, 2016), or, at the latest, the date on which she filed her First Amended Complaint (i.e., July 25, 2016). *See Maegdlin v. International Ass'n of Machinists and Aerospace Workers, Dist. 949*, 309 F.3d 1051 (8th Cir. 2002). Both dates are within the 90 days that Ms. Akaku had to bring her Title VII claim against Defendant UNITE HERE.[4]

The purpose of Rule 15(c) is to ensure that cases are decided on the merits. *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1543 (8th Cir. 1996). Specifically, Rule 15(c)(1)(B) provides that an amendment to the complaint relates back to the date of the original complaint:

> when … the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading.

---

[4] The EEOC issued Ms. Akaku a right to sue Defendant UNITE HERE on May 17, 2016. Even if she received notice of her right to sue the same day, her 90 days would have run no sooner than August 16, 2016.

Fed. R. Civ. P. 15(c)(1)(B). The Eighth Circuit's holding in *Maegdlin* is controlling. In *Maegdlin*, the plaintiff alleged that his union failed to properly represent him with respect to grievances against his employer. *Maegdlin*, 309 F.3d at 1052. In the original complaint, the plaintiff alleged that the union's failures were the result of sex discrimination. *Id.* He later sought to amend the complaint to replace his breach-of-duty claim with sex discrimination claims under Title VII and the Missouri Human Rights Act. *Id.* The district court dismissed the Title VII discrimination claim as untimely because it was asserted more than 90 days after he received notice from the EEOC of his right to sue. *Id.* On appeal, the Eighth Circuit reversed, holding that the Title VII sex discrimination claim was timely because it, along with additional factual allegations, merely expanded upon the plaintiff's earlier allegations against the union. *Id.* at 1052–53 (citations omitted). The Court emphasized that Rule 15 allows relation back despite a "change in legal theory," and that it is "facts well pleaded … that state a cause of action and put a party on notice." *Id.* at 1053 (citations omitted).

So, too, here. Ms. Akaku's proposed amendments do nothing more than expand upon the allegations she made in her original complaint. As discussed above, Defendant UNITE HERE has been on notice of Ms. Akaku's discrimination claims—and the basic facts underlying them—for nearly two years. Because Ms. Akaku's proposed amendments arise out of the same "conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading," they relate back to the date of the original complaint, and, as such, are timely. *See* Fed. R. Civ. P. 15(c)(1)(B).

UNITE HERE argues that Ms. Akaku's Title VII claim does not relate back to the date of the original complaint because, in its estimation, the original complaint was untimely. In support of this argument, UNITE HERE cites two cases. Both are inapposite. In the first, *Williams v. Lampe*, the Seventh Circuit held that a plaintiff's Section 1983 claim did not relate back to the date of the original complaint because the original complaint was, itself, time-barred. 399 F.3d 867 (7th Cir. 2005). So, too, in the second. *Papenthien v. Papenthien*, 16 F. Supp. 2d 1235, 1241 (S.D. Cal. 1998).[5]

Both Ms. Akaku's original complaint and her first amended complaint were timely. And nothing suggests otherwise.[6] Perhaps UNITE HERE means to argue that amended complaints cannot relate back to timely-filed complaints when those complaints—for whatever reason—were properly dismissed based on the legal theories they explicitly stated at the time of filing. On this approach to Rule 15(c)(1)(B), UNITE

---

[5] Ms. Akaku believes that these cases are in error. *See, e.g., Goss v. Revlon, Inc.,* 548 F.2d 405 (2d Cir. 1976) (holding that the plaintiff's untimely Section 1981 claims related back to the Title VII claims in his original complaint, even though the Title VII claims were themselves untimely). But, regardless, UNITE HERE's argument fails for the reasons discussed *infra*.

[6] Ms. Akaku timely served and filed her state and local discrimination claims against UNITE HERE. That is true regardless of whether they are preempted, and regardless of whether they are preempted by a federal law that provides for a cause of action that would have been untimely if it had been asserted as a count in the complaint. The fact that the preemptive force of federal labor laws can be "extraordinary," as UNITE HERE explains while citing *Caterpillar v. Williams*, 482 U.S. 386, 383 (1987), simply allows federal courts to exercise jurisdiction over federal claims pleaded in state law terms *as if* they were originally pleaded in terms of federal law—that is, say, without requiring the plaintiff to amend the complaint. *Wrobbel v. Asplundh Const. Corp.*, 549 F. Supp. 2d 868, 871–72 (E.D. Mich. 2008); *see generally* Gil Seinfeld's *The Puzzle of Complete Preemption*, University of Pennsylvania Law Review, 155:3 (Jan. 2007). Procedural magic aside, preemption does not change the statute of limitations that applies to claims pleaded under state law.

HERE might argue that Ms. Akaku's Title VII claim against the union cannot relate back to the date of the original complaint because the legal theories explicitly stated in the original complaint were preempted by federal labor law.[7] But this radically expands the reach of the cases UNITE HERE cites in its favor and turns Rule 15(c)(1)(B) on its head.

Indeed, courts have consistently held to the contrary. *E.g.*, *Wilson v. Westinghouse Elec. Corp.*, 838 F.2d 286, 289–91 (8th Cir. 1988) (discussed *infra*); *Sunkyong Int'l, Inc. v. Anderson Land & Livestock Co.*, 828 F.2d 1245 (8th Cir. 1987) (holding that amended complaint related back to date of original complaint even though original complaint was dismissed for defective service); and *Sessions v. Rusk State Hosp.*, 648 F.2d 1066 (5th Cir. 1981) (holding that plaintiff's Title VII claim related back to original complaint that explicitly stated a state-law equivalent barred by Eleventh Amendment immunity because both claims "asserted in essence the same charge of racial discrimination"). For example, in *Wilson v. Westinghouse Elec. Corp.*, the Eighth Circuit reversed the district court's decision denying the plaintiff's motion to amend because the original complaint only explicitly stated a legal theory that was barred by subject-matter jurisdiction at the time of filing. 838 F.2d 286, 289–91 (8th Cir. 1988). The plaintiff had originally filed the complaint stating an age discrimination claim under the ADEA *before* the 60-day waiting period mandated by the ADEA had lapsed. *Id.* But the Eighth Circuit held that the district court's approach to Rule 15(c) is "precisely the kind of procedural mousetrap that the Federal Rules were designed to dismantle." *Id.* at 289. The court further explained that

---

[7] As discussed below in Section III, Ms. Akaku's stated and local claims against UNITE HERE are not preempted.

the *doctrine of relation back*, in particular, "serves the remedial purpose of protecting [legal claims] raised in amended pleadings from the statute of limitations." *Id.* at 290.

Accordingly, the "existence of an affirmative defense,  such as lack of personal jurisdiction or the running of the statute of limitations, [or, say, federal preemption], has no effect on whether the original pleading put the opposing party on notice of the substance of what is sought to be added by amendment." *Santana v. Holiday Inns, Inc.*, 686 F.2d 736, 739 (9th Cir. 1982).

UNITE HERE's approach to Rule 15(c)(1)(B) makes it a procedural mousetrap, which finds no support in the text of the rule or the purpose of the rule, and little (if any) support in the cases interpreting the rule.  Moreover, Ms. Akaku has cited controlling and persuasive authority to the contrary. Because her Title VII claim relates back to the date of the original complaint, it is timely, and not subject UNITE HERE's motion for judgment on the pleadings.

## III.   MS. AKAKU'S STATE AND LOCAL DISCRIMINATION CLAIMS ARE NOT PREEMPTED BY FEDERAL LABOR LAW

UNITE HERE argues that Ms. Akaku's state and local discrimination claims are preempted by federal labor law. (ECF No. 19 at 6–10.) The principal premise of UNITE HERE's argument—subject to very narrow exceptions—is that an employee may not sue her union under state or local anti-discrimination law for anything the union did (or failed to do) in its capacity as her exclusive bargaining agent. This is because, according to UNITE HERE, all such conduct falls within the scope of the union's duty of fair representation ("DFR"). (ECF No. 17 at 6.)

Admittedly, UNITE HERE cites a plethora of circuit court precedent (and other authority) in support of this premise. But, for the reasons that follow, the Court should reject UNITE HERE's premise, find no preemption of Ms. Akaku's state and local discrimination claims, and deny UNITE HERE's motion for judgment on the pleadings in its entirety.

First, none of UNITE HERE's precedent or authority is binding upon this Court: neither the Supreme Court nor the Eighth Circuit has adopted UNITE HERE's premise. Second, notwithstanding UNITE HERE's plethora of precedent, there is a circuit-court split on the merits of the premise. And third, upon closer inspection, while the cases UNITE HERE cites are many, they are inapposite, and their logic is specious (at least, as applied in the context of state anti-discrimination laws).

## A. State Substantive Law Is Not Preempted by Federal Labor Law Unless Congress Clearly and Manifestly Intended As Much

Federal preemption is grounded in U.S. Constitution's Supremacy Clause, which says that the laws of the United States, "shall be the Supreme Law of the Land." *In re Aurora Corp. Organic Milk Mktg. and Sales Practice Litig.*, 621 F.3d 781, 791 (8th Cir. 2010) (quoting U.S. Const. art VI, cl. 2). Whether federal law preempts a state law depends on what the purpose of Congress in enacting the federal law. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485–86 (1996); *Retail Clerks Int'l Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 375 U.S. 96, 103 (1963). "Congress does not cavalierly pre-empt state-law causes of action." *Aurora*, 621 F.3d at 792 (quoting *Medtronic*, 518 U.S. at 485–86). When determining whether Congress intended federal labor laws to preempt state anti-

17

discrimination laws, as in all cases of purported preemption, courts must presume the answer is, "No," *unless* the "*clear and manifest purpose* of Congress" was to preempt state law in that area. *Id.* (emphasis added).

If Congress did not expressly preempt a state law, and if there is no apparent conflict between the laws, then the federal law preempts the state law only if "the scheme of federal regulation is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." *Id.* at 93 (internal quotations omitted) (quoting *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992) (plurality opinion). In the case of federal labor law, specifically, Congress did not intend to supplant "compatible" state laws that do not frustrate the purposes of (say) the National Labor Relations Act ("NLRA") or the Labor Management Relations Act ("LMRA"). *See Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 756–57 (1985).

Federal labor law does not expressly preempt the MHRA, and there is no apparent conflict between them. *See Figueroa v. Foster*, 2016 WL 2851335, at *3 (S.D.N.Y. May 12, 2016), appeal filed (2nd Cir. June 13, 2016). Here, then, the question is whether federal labor law is so pervasive that it is reasonable to conclude that Congress left no room for states to supplement unions' duty of fair representation ("DFR"). The answer is no.

## B. Congress Intended Both Title VII and State Anti-Discrimination Laws to Supplement Unions' DFR

In passing Title VII, Congress declared its "policy against discrimination to be of the *highest priority*." *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47–49 (1974)

(citations and internal quotations omitted) (emphasis added). At the time, the Supreme Court had effectively recognized unions' DFR for nearly three decades. *See Steele v. Louisville & N.R. Co.*, 323 U.S. 192 (1944). Nonetheless, given its priority in rooting out discrimination, Congress still felt it necessary to create a separate cause of action against unions for discriminating in their representative capacities—perhaps because proving breach of a union's DFR might prove too difficult. *See Alexander*, 415 U.S. at 58 and n. 19 (1974).

Moreover, in Title VII, Congress expressly declared its intention to leave room for states to supplement Title VII (and presumably federal labor law) with their own compatible anti-discrimination laws. *See* 42 U.S.C. § 2000e-7. Accordingly, since 1964, the federal government has developed a comprehensive work-sharing agreement with the states in an effort to jointly address the problem of employment discrimination. *Alexander*, 415 U.S. at 47–49; *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100–03 (1983) (holding that ERISA did not preempt a compatible New York Human Rights Law "given the importance of state fair employment laws to the federal enforcement scheme"). It is thus unreasonable to infer that Congress intended to leave no room for states to supplement federal labor law with compatible anti-discrimination laws like the MHRA. *Cf. Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 750 (1985) (discussing *New York Telephone Co. v. New York Labor Dept.,* 440 U.S.519, 532 (1979) (plurality opinion), which held that New York's unemployment insurance law was not preempted by federal labor law because "the legislative history of the Social Security Act of 1935, along with other federal legislation, suggested that Congress had decided to permit a State to pay

unemployment benefits to strikers."). *But see generally Figueroa*, 2016 WL 2851335 (rejecting similar arguments made by the State of New York's Human Rights Commissioner).[8]

Yet, UNITE HERE argues to the contrary. According to UNITE HERE, a line of circuit court cases—taking inspiration from the Supreme Court's holding in *Vaca v. Sipes*, 386 U.S. 171 (1967)—compel a different conclusion. (ECF No. 19 at 6–7.) *See, e.g.*, *Adkins v. Mireles*, 526 F.3d 531, 539 (9th Cir. 2008) (concluding that the DFR preempted various state-law claims, not including anti-discrimination claims); *Thomas v. Nat'l Ass'n of Letter Carriers*, 225 F.3d 1149, 1158 (10th Cir. 2000) (concluding that the DFR preempted state civil conspiracy and wrongful discharge claims); *BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers of Am., IAMAW Dist. Lodge 4*, 132 F.3d 824, 830 (1st Cir. 1997) (concluding that the DFR preempted various state claims, not including anti-discrimination claims); and *Richardson v. United Steelworkers of Am.*, 864 F.2d 1162, 1169 (5th Cir. 1989) (concluding that the DFR preempted state claim based on failure of union to properly advise members of rights under a collective

---

[8] As noted above, however, the State of New York has appealed the decision in *Figueroa* to the Second Circuit Court of Appeals and that appeal is pending. The district court in *Figueroa* appeared not to consider that Congressional intent in federal labor law cannot be understood without reference to federal anti-discrimination law. *See Figueroa*, 2016 WL 2851335, at *7–10. Indeed, as common canons of statutory construction suggest, the Congressional intent manifest in a statute must be understood in relation to all of its laws: they should be read consistently; conflicts should be resolved in favor of younger laws; and laws that more precisely target a specific area of conduct should be given deference over laws that more broadly cover the same conduct. In this case, all support an interpretation of federal labor law that does not preempt compatible state anti-discrimination laws.

bargaining agreement), *rhrg. and rhrg. en banc denied*, 846 F.2d 1162 (5th Cir. 1989), *cert. denied* 495 U.S. 946) (1990).

The problem for UNITE HERE is that *Vaca* and these circuit court cases are at best inapposite and at worst wrongly decided. First, as mentioned in the parentheticals above, except perhaps for *Thomas* in the Tenth Circuit, none of these cases involved preemption of state anti-discrimination claims. To this extent, they have little bearing on whether Congress intended the DFR to preempt state anti-discrimination laws, especially in light of clearly expressed Congressional intent to the contrary in Title VII. More specifically, in *Vaca*, the plaintiff alleged that he had been terminated in violation of the collective bargaining agreement (CBA), and that the union had "arbitrarily, capriciously, and without just or reasonable cause" refused to pursue the fifth step of the grievance procedures outlined in his CBA. *Vaca*, 386 U.S. at 173. Not surprisingly, the Court held that the plaintiff's claim arose under federal law as a DFR claim. *Id.* at 177. But whether the DFR preempts compatible state anti-discrimination laws was simply not at issue in *Vaca.*

In addition to being inapposite, the reasoning in the circuit court cases simply begs the question at issue. The following explanation from the Fifth Circuit in *Richardson* is indicative of how these courts came to their conclusions:

> Because plaintiffs alleged that the Union breached a duty owed them by virtue of its position as their collective bargaining agent, the district court correctly characterized their claim as a federal duty of fair representation claim under the NLRA over which it had removal jurisdiction. Under *Vaca,* the NLRA exclusively defines the duties to represented workers imposed upon a union by virtue of its status as their collective bargaining agent under the NLRA.

864 F.2d at 1170. But this is false, of course, because unions have independent duties in their representational capacities (for example) to refrain from discriminating against their members in violation of Title VII. Indeed, as discussed above, Congress made clear in Title VII that it intended to impose broad anti-discrimination duties on unions in addition to their DFR. In short, the cases cited by UNITE HERE are silent on the only question that matters: how Congress could intend for Title VII to supplement the DFR *and* for compatible state anti-discrimination laws to supplement Title VII *and* for states not to have the power to enact laws that supplement Title VII.

The evolution of Sixth Circuit case-law on the issue of federal preemption of compatible state anti-discrimination laws is instructive. In 1985, the Sixth Circuit held in *Maynard v. Revere Copper Prod., Inc.* that the DFR preempted a disability discrimination claim under the Michigan Handicappers Civil Rights Act brought against a union for its conduct as the plaintiff's exclusive bargaining agent. 773 F.2d 733 (6th Cir. 1985). As in the cases cited by UNITE HERE, the *Maynard* court explained that the DFR "relates to an area of labor law which has been so fully occupied by Congress as to foreclose state regulation." *Id.* at 735. But the Sixth Circuit did not stick with *Maynard* for long.

Three years after *Maynard*, the Supreme Court held in *Lingle v. Norge Div. of Magic Chef* that state anti-discrimination laws are not preempted by Section 301 of the Labor Management Relations Act unless the merits of the state claim depend on an interpretation of the plaintiff's collective bargaining agreement. 486 U.S. 399 (1988). In its analysis, the Court explained that:

> the mere fact that a broad contractual protection against discriminatory . . . discharge may provide a remedy for conduct that coincidentally violates state-law does not make the existence or the contours of the state law violation dependent on the terms of the private conduct.

*Id.* at 412–13. Following *Lingle*, the Sixth Circuit abrogated its holding in *Maynard*. *Wrobbel v. Asplundh Const. Corp.*, 549 F. Supp. 2d 868, 874–75 and n. 6 (E.D. Mich. 2008) (recognizing *Maynard's* abrogation and rejecting the arguments set forth in UNITE HERE's First (*BIW*) and Fifth Circuit (*Richardson*) cases (*e.g.*, citing *Tisdale v. United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Canada, Local 704*, 25 F.3d 1308 (6th Cir. 1994) and *Jones v. Cassens Transport,* 982 F.2d 983, 987 and n. 3 (6th Cir. 1993). Indeed, as the Sixth Circuit explained in *Tisdale*:

> It should be self-evident that if Congress did not preempt state civil rights actions by operation of federal civil rights laws it could not have meant to do so through federal labor law.

25 F.3d at 1311–12 (citation omitted). *See also Wrobbel*, 549 F. Supp. 2d at 874–75 (comparing Section 301 preemption to DFR preemption and explaining how the case for the latter will be weaker than the former because the DFR, as a judicial creation, is further removed from Congressional intent than the express text of Section 301 itself). *But see Figueroa*, 2016 WL 2851335, at *9–10.

Thus, after previously ruling in line with UNITE HERE's cases, the Sixth Circuit has since wrestled squarely with the question at issue in this case and seen fit to reverse itself. Unlike the circuit courts cited by UNITE HERE, the Sixth Circuit finally viewed federal labor law (and Congressional intent) in light of Title VII, other federal anti-discrimination laws, and their compatible state law counterparts. Viewed in the proper

light, the Sixth Circuit came to the only reasonable conclusion one can come to: that Congress intended to leave room for states like Minnesota to enact laws like the MHRA that supplement Title VII in a coordinated effort to root out discrimination in employment by both employers *and* unions. Therefore, federal labor law as manifest in the DFR does not preempt Ms. Akaku's state and local discrimination claims against UNITE HERE.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's motion for judgment on the pleadings in its entirety.

Date: September 27, 2016

NICHOLS KASTER, PLLP

s/ Matthew A. Frank
David E. Schlesinger (#0387009)
    schlesinger@nka.com
Matthew A. Frank (#0395362)
    mfrank@nka.com
80 South Eighth Street
4600 IDS Center
Minneapolis, Minnesota 55402-2242
Telephone:  (612) 256-3200
Fax:  (612) 338-4878

ATTORNEYS FOR PLAINTIFF