UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Sisay Akaku,                                                       Civil No. 16-1901 (DWF/FLN)

           Plaintiff,

v.                                                           **MEMORANDUM**
                                                               **OPINION AND ORDER**

UNITE HERE Local No. 17, and
Graves Hospitality Corporation,

           Defendants.

---

David E. Schlesinger, Esq., and Matthew A. Frank, Esq., Nichols Kaster, PLLP, counsel for Plaintiff.

Jessica M. Marsh, Esq., and Michael John Moberg, Esq., Jackson Lewis PC, counsel for Defendant Graves Hospitality Corporation.

Brendan D. Cummins, Esq., Justin D. Cummins, Esq., Laura I. Bernstein, Esq., and Robert D. Metcalf, Esq., counsel for Defendant UNITE HERE Local No. 17.

---

## INTRODUCTION

This matter is before the Court on an Amended Motion for Judgment on the Pleadings brought by Defendant UNITE HERE Local No. 17 ("Local 17"). (Doc. No. 34.)[1] For the reasons set forth below, the motion is granted in part and denied in part.

---

[1]     Local 17 brought an initial motion for judgment on the pleadings (Doc. No. 17), but brought the present amended motion after Plaintiff Sisay Akaku ("Plaintiff" or

(Footnote Continued on Next Page)

## BACKGROUND

This case involves allegations of employment discrimination. Plaintiff, a black woman of Ethiopian descent, works as a busser in Towns/American Grill, a restaurant owned and run by Defendant Graves Hospitality Corporation ("Graves"). (SAC ¶¶ 1, 4.)[2] Local 17 is a union that represents employees in the hotel and restaurant industry in the Twin Cities area, including Plaintiff. (*Id.* ¶ 2.) The terms and conditions of Plaintiff's employment are established, in part, by a collective bargaining agreement ("CBA"). (*Id.* ¶¶ 10-12.)

In 2014, Graves opened a new restaurant (Rival House) downstairs in the same building where Towns/American Grill is located. (*Id.* ¶ 5.) Several employees at Towns/American Grill were hired to work at Rival House. (*Id.* ¶ 6.) Graves interviewed Plaintiff for a position at Rival House, but she was not offered the job. (*Id.* ¶¶ 5-6.) According to Graves, Plaintiff applied for a Server Assistant position, which requires verbal interaction with patrons, and Graves maintains that Plaintiff did not speak English well enough to perform the required duties. Plaintiff alleges that among the employees hired to work at Rival House, some were people outside of Plaintiff's race and national origin. (*Id.*) Plaintiff also alleges that soon after Rival House opened, Towns/American

---

(Footnote Continued From Previous Page)

"Akaku") filed a Second Amended Complaint (Doc. No. 32 (Second Amended Complaint ("SAC")).

[2] Along with her opposition, Plaintiff filed the Affidavit of Sisay Akaku (Doc. No. 44). Because the Court is not converting this motion to a motion for summary judgment, the Court considers only those materials necessarily embraced by the SAC.

stopped serving customers after breakfast, which resulted in a reduction in Plaintiff's hours from full-time to approximately 8 hours per week. (*Id.* ¶¶ 8-9.) Plaintiff asserts that she was qualified to perform the duties of a Server Assistant and that Graves' refusal to allow her to switch to Rival House was the result of discrimination on the basis of race and national origin. (*Id.* ¶ 15.)

Plaintiff also alleges that in July and August 2014, she sought assistance from her union, Local 17, and specifically that she complained to Local 17 about Graves' discriminatory conduct and that she asked for help moving to Rival House. (*Id.* ¶ 10.) Plaintiff alleges that Local 17 deprived her of her union-membership rights under the CBA and otherwise discriminated against her on the basis of race and national origin by failing to file a grievance and generally failing to assist her in securing a job at Rival House.

Local 17, however, contends that it responded to each of Plaintiff's complaints and requests in the summer of 2014, and that in September 2014, Local 17 met with Plaintiff to discuss work schedules and her interest in the Server Assistant position at Rival House. (Doc. No. 33 (Second Amended Answer ("SAA")) ¶¶ 10, 11.) Local 17 asserts that it spent significant time during the fall and winter of 2014 helping Plaintiff obtain alternative full-time employment, but that Plaintiff elected not to take any of the available positions. Local 17 also asserts that on September 11, 2015, it filed a grievance regarding Graves denying Plaintiff a Server Assistant position within the 14–day deadline under the CBA after Plaintiff requested that such a grievance be filed. (*Id.* ¶ 19, Exs. G-I.) Local 17 further asserts that Plaintiff did not pursue the grievance, and in particular,

3

opted not to present the grievance before the Local Grievance Committee. (*Id*. ¶ 19, Ex. N).

Ultimately, Plaintiff filed a charge of discrimination against Graves with the Equal Employment Opportunity Commission ("EEOC"), which was cross-filed with the Minnesota Department of Human Rights ("MDHR"). (SAC ¶ 29.) Both the EEOC and the MDHR issued Plaintiff a right to sue on April 1, 2016, and June 24, 2016, respectively. (*Id*.) As against Local 17, Plaintiff filed charges of discrimination with the St. Paul Department of Human Rights and Economic Security ("St. Paul DHR") and the EEOC. (*Id*. ¶ 28.) The St. Paul DHR found probable cause to believe that Local 17 discriminated against Plaintiff on the basis of race and national origin and issued a right to sue on March 29, 2016. (*Id*.; Doc. No. 43 ¶ 1, Ex. 6.) The EEOC adopted the St. Paul DHR's findings and issued a right to sue on May 17, 2016. (SAC ¶ 28, Ex. O.) The EEOC's Dismissal and Notice of Rights stated that any lawsuit on Plaintiff's federal claims "must be filed <u>WITHIN 90 DAYS</u> of [her] receipt of this notice; or [Plaintiff's] right to sue based on this charge will be lost." (*Id*.)[3]

On May 10, 2016, Plaintiff sued Graves and Local 17 (and a third defendant) in Ramsey County Court. (Doc. No. 1, Ex. A.) Plaintiff asserted claims for violations the MHRA and St. Paul Human Rights Ordinance ("St. Paul HRO") (both claims under state

---

[3] With respect to Plaintiff's claims against Graves, the St. Paul DHR found that Plaintiff lacked adequate language skills to perform the position of Server Assistant and that Plaintiff did not meet the burden of establishing a prima facie case of discrimination against Graves. (SAA ¶ 29, Ex. P at ¶¶ 15-17 & VI.A.)

and local law). (Doc. No. 1, Ex. 1.) On June 8, 2016, Graves removed the case to this Court. (Doc. No. 1.) Both defendants filed answers. (Doc. Nos. 3, 4.) On July 19, 2016, the parties filed a stipulation to amend the complaint to change the case caption, dismiss the third defendant without prejudice, and add a claim for discrimination against Graves. (Doc. No. 8.) Plaintiff filed a First Amended Complaint on July 25, 2016. (Doc. No. 10.) After a dispute about Plaintiff's intent to amend her complaint to add federal claims of discrimination against Local 17, on October 4, 2016, Plaintiff filed the SAC adding federal discrimination claims against Local 17. (Doc. No. 32.) In the SAC, Plaintiff alleges the following: Count I—Violation of the MHRA against Local 17; Count II—Violation of the St. Paul HRO against Local 17; Count III—Violation of the Civil Rights Act of 1964 against Local 17; Count IV—Violation of 42 U.S.C. § 1981 against Local No. 17; Count V— Violation of 42 U.S.C. § 1981 against Graves; Count VI—Violation of the MHRA against Graves. (*See* SAC.) Plaintiff had not filed Federal discrimination claims against Local 17 in her prior complaints. Thus, the first time federal claims were asserted against Local 17 was on October 4, 2016.

Local No. 17 presently moves for judgment on the pleadings, arguing that Plaintiff's claims against Local 17 were filed outside the governing limitations period, and even if timely, Plaintiff's claims fail to state a plausible claim against Local 17. (Doc. No. 34.)

## DISCUSSION

### I. Legal Standard

A party may move for judgment on the pleadings at any point after the close of the

5

pleadings, so long as it moves early enough to avoid a delay of trial. Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate only when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law[.]" *See Ashley Cty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009) (quoting *Wishnatsky v. Rovner*, 433 F.3d 608, 610 (8th Cir. 2006)). The Court evaluates a motion for judgment on the pleadings under the same standard as a motion brought under Federal Rule of Civil Procedure 12(b)(6). *See id*.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker,* 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens,* 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha,* 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp. v. Pall Corp.,* 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 545 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. As the United States Supreme Court reiterated, "[t]hreadbare recitals

of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly,* 550 U.S. at 556.

## II. Discussion

### A. Timeliness of State and Local Claims

In Counts I and II, Plaintiff asserts claims against Local 17 for violations of the MHRA and St. Paul HRO, respectively, arguing that Local 17 discriminated against her based on her race and national origin. Defendant argues that Plaintiff's state and local claims are preempted entirely by the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151, *et seq.*, which converts these claims to duty of fair representation ("DFR") claims. Defendant further argues that Plaintiff had six months to file DFR claims with the National Labor Relations Board ("NLRB") or in Court and that she did not do so within that time frame.

Plaintiff disputes that these claims are preempted and argues that Congress did not intend to supplant compatible state laws that do not frustrate the purposes of the NLRA. Moreover, Plaintiff argues that Congress intended for both Title VII and state anti-discrimination laws to supplement unions' duties with respect to fair representation. Plaintiff argues that the cases relied on by Local 17 are either inapposite or wrongly decided.

A union serving "as the exclusive bargaining representative" of a group of employees has "a statutory duty fairly to represent all of those employees." *Vaca v. Sipes*, 386 U.S. 171, 177 (1967) (citation omitted). A union violates the DFR when its "conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Id*. at 190. Federal labor law governs claims against unions that are subsumed by the DFR. *Id.* at 177 (noting that federal law governs where complaint alleges breach of DFR); *Smith v. Local Union No. 110, Int'l Bhd. of Elec. Workers*, 681 F. Supp. 2d 995, 999-1001 (D. Minn. 2010) (finding state-law claims "premised" on union's role as plaintiff's representative "subsumed under and completely preempted by" federal DFR claim).

Local 17 cites to a case from this District, *Patterson v. IATSE Local 13*, 754 F. Supp. 2d 1043 (D. Minn. 2010), in support of its preemption argument. In *Patterson*, the court held that the plaintiff's claims under the MHRA for discrimination (based on her gender, association with chemically dependent persons, and learning disability) were preempted by the DFR. *Id*. at 1046-47. The court in *Patterson* explained that the allegations of arbitrary and discriminatory conduct by a union was not a peripheral concern of the LMRA, regulation of such conduct under the DFR had been long recognized, and, unlike state police power or unique state interests, anti-discrimination law has long been a federal concern regulated by Congress. *Id*. at 1047. The Court agrees with and applies the same reasoning here and finds that Plaintiff's state-law discrimination claims against Local 17 are preempted.

That Plaintiff's state-law claims are preempted is important because DFR claims are governed by a six-month statute of limitations that is measured from the time of the alleged unfair labor practice. *Id.* (citing *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 169-70 (1983)). The SAC indicates that Plaintiff had actual knowledge of Local 17's alleged violations by December 14, 2014. Plaintiff, however, did not file her original complaint until May 2016, well outside the six-month statute of limitations period. Therefore, Plaintiff's state-law claims are time-barred and dismissal of Counts I and II is warranted.

### B. Timeliness of Federal Claims

In Counts III & IV, respectively, Plaintiff alleges federal discrimination claims under Title VII and § 1981. In essence, Plaintiff alleges that Local 17 failed to file a grievance (and otherwise failed to assist her) on the basis of her national origin and race. These claims were asserted for the first time against Local 17 in the SAC, which was filed on October 4, 2016.

Local 17 argues that the Notice of Dismissal and Rights issued by the EEOC on May 17, 2016, clearly stated that Plaintiff must file any and all Title VII claims within 90 days of her receipt of the notice. Plaintiff did not file her Title VII claim against Local 17 within that time period. Plaintiff did, however, assert Title VII claims against Graves in both the original Complaint and the First Amended Complaint. (Doc. No. 1 at Count III; Doc. No. 10 at Count III.) Plaintiff does not appear to dispute that her Title

VII claim against Local 17 was filed outside the limitations period,[4] but she nonetheless argues that the claim is timely because it relates back to the date on which she served her original complaint against Graves and Local 17 (May 10, 2016), or at the latest the date on which she filed her First Amended Complaint (July 25, 2016), both of which are within the 90-day time frame.[5]

Federal Rule of Civil Procedure 15 provides that an amendment to a complaint will relate back to the date of the original complaint "when . . . the amendment asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). Plaintiff argues that the purpose of Rule 15(c) is to ensure that cases are decided on their merits, that the Title VII claim expands on the allegations made in her original complaint, and that Local 17 has been on notice of Plaintiff's discrimination claims for nearly two years. In support, Plaintiff relies on *Maegdlin v. International Ass'n of Machinists & Aerospace Workers, District 949*, 309 F.3d 1051 (8th Cir. 2002). In *Maegdlin*, the plaintiff alleged that his union failed to properly represent him with respect to certain grievances with his employer, and he originally alleged that the union's failures were due to gender discrimination. *Id.* at 1052-53. Plaintiff later sought to amend his complaint to replace

---

[4] Indeed, Plaintiff acknowledges that she moved to amend her complaint to add a Title VII claim against Local 17 more than 90 days after she received the notice of her right to sue from the EEOC.

[5] The EEOC issued the right to sue on May 17, 2016, so the 90 days would expire no sooner than August 16, 2016.

his breach-of-duty claim with Title VII and Missouri Human Rights Act gender discrimination claims. *Id*. at 1052. The district court held that the Title VII claim was untimely because it was brought outside the 90-day time frame set forth in his EEOC letter. *Id*. The Eighth Circuit reversed, holding that the Title VII claim was timely because the new allegations expanded on those of the earlier pleading, which asserted that the union failed to represent the plaintiff because of his gender. *Id*. at 1053.

Here, the Court agrees that the allegations in the SAC adding Title VII claims against Local 17 expand upon the allegations in the original complaint (or at a minimum the allegations in the First Amended Complaint). Specifically, Plaintiff's Title VII claim is based on the alleged discrimination originally set forth. Thus, the amended allegations properly relate back. However, the inquiry does not end there because Local 17 argues that the amended allegations do not properly relate back because the claims alleged against Local 17 in the original Complaint were themselves untimely. It is true that before the relation-back doctrine can be applied, there must be a "timely filed original pleading." *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 541 (2010); *see also* James Wm. Moore, *et al.*, Moore's Federal Practice-Civil § 15.19 (3d ed. 2015). It is also true that Plaintiff's original state-law claims, as preempted, were untimely. However, Plaintiff points out that the original complaint was timely filed even though the legal theories were ultimately preempted. Plaintiff argues that finding the original complaint to be untimely for purposes of rejecting a relation-back argument would radically expand the reach of the cases cited by Local 17. The Court agrees and concludes that Local 17 has not provided compelling authority for the proposition that the preempted claims

11

affect the relation-back of Plaintiff's Title VII claims. *See, e.g.*, *Wilson v. Westinghouse Elec. Corp.*, 838 F.2d 286, 289-91 (8th Cir. 1988) (reversing a decision to deny motion to amend to add an ADEA claim because original complaint only stated a legal theory barred by subject-matter jurisdiction; explaining that the relation-back doctrine "serves the remedial purpose of protecting claims raised in amended pleadings from the statute of limitations"); *Sunkyong Int'l, Inc. v. Anderson Land & Livestock Co.*, 828 F.2d 1245, 1252-53 (8th Cir. 1987) (holding that an amended complaint related back to date of original complaint and cured any defect in service); *Sessions v. Rusk State Hosp.*, 648 F.2d 1066, 1070 (5th Cir. 1981) (holding that a Title VII claim related back despite the fact that the originally filed claim was barred by the Eleventh Amendment). The Court concludes that Plaintiff's claims properly relate-back to her original complaint and, therefore, her Title VII claim is timely.[6]

### C. Failure to State A Claim

Finally, Local 17 argues that even if the claims are timely, Plaintiff fails to state a plausible claim for relief. In support of her Title VII and § 1981 claims against Local 17, Plaintiff argues that she was discriminated against by Graves when Graves refused to move her to a Rival House position because of her race or national origin, and that when she approached Local 17 for help, Local 17 failed to file a discrimination grievance on her behalf or otherwise assist her in moving to Rival House. Plaintiff further alleges that Local 17 failed to advocate for her even though it took action on behalf of others outside

---

[6] Plaintiff's § 1981 claim is also timely.

of her race and national origin. Plaintiff argues that, taking her allegations as true, she has stated a claim for discrimination and that her allegations create a reasonable expectation that discovery will yield evidence.

The parties dispute the proper standard for analyzing these claims. Plaintiff asserts that to state a claim for race discrimination under Title VII or § 1981, a plaintiff need only allege that the union discriminated against her on the basis of protected status, not that the union also violated its DFR. *See, e.g.*, *Green v. Am. Fed'n of Teachers/Ill. Fed'n of Teachers Local 604*, 740 F.3d 1104, 1107 (7th Cir. 2014) (holding that a Title VII claim against a teachers' union does not depend on showing that the union violated a state statute or contract); *Garity v. APWU Nat'l Labor Org.*, 828 F.3d 848, 863 (9th Cir. 2016) (holding that an ADA claim against a union does not include a breach of DFR element). Local 17, on the other hand, argues that a plaintiff pursuing a federal discrimination claim against a union must prove *both* that the alleged breach was motivated by illegal discrimination based on a protected class *and* that the union breached its DFR. *See, e.g.*, *Carter v. United Food & Commercial Workers, Local 789*, 963 F.2d 1078, 1080 (8th Cir. 1992) (explaining that the DFR standard (regarding arbitrary, discriminatory, or bad faith conduct) applies to union activity). Applying the more difficult standard, Local 17 argues that Plaintiff's allegations are conclusory and, at most, suggest negligence or poor judgment and therefore fail to state a claim.

The Court concludes that even accepting that Plaintiff must prove both a breach of the DFR and that the alleged breach was motivated by illegal discrimination, Plaintiff has sufficiently stated a claim. Plaintiff may establish a breach of the DFR by showing that

13

Local 17's conduct was arbitrary, discriminatory, or in bad faith. Here, Plaintiff argues that Local 17's conduct was discriminatory. More specifically, Plaintiff alleges that Local 17 failed to file a grievance on her behalf or otherwise assist her because of her race or national origin. The Court concludes that it would be premature to dismiss Plaintiff's Title VII claim at this stage. Instead, viewing the allegations in the light most favorable to Plaintiff, Plaintiff has sufficiently alleged a claim for discrimination based on race or national origin under Title VII and § 1981. Plaintiff is entitled to conduct discovery and the parties can argue issues related to the proper standard, along with the existence of material factual issues, at the summary judgment stage. Thus, the Court denies Local 17's motion as it applies to Counts III and IV.

## ORDER

Based upon the foregoing, **IT IS HEREBY ORDERED** that Local 17's Amended Motion for Judgment on the Pleadings (Doc. No. [34]) is **GRANTED IN PART** and **DENIED IN PART** as follows: Claims I and II are **DISMISSED WITH PREJUDICE** and the motion is otherwise **DENIED**.

Dated: June 23, 2017                    s/Donovan W. Frank
                                        DONOVAN W. FRANK
                                        United States District Judge